**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO
Honorable Howard R. Tallman**

In re:                                                )
                                                       )
**PETER ALLEN PAYER and**                              )   **Case No. 10-33656 HRT**
**JENNIFER LEE PAYER,**                                )
                                                       )   **Chapter 13**
**Debtors.**                                           )
                                                       )
_____                )

**ORDER ON DEBTOR'S RESPONSE TO MOTION TO SHOW CAUSE**

This case comes before the Court on *Debtor's Response to Court's Order to Show Cause* (docket #74) (the "Response").

On March 30, 2016, the Court entered its *Order to Show Cause Why Case Should Not Be Dismissed* (docket #72) (the "Order to Show Cause"). At the time the Court issued its Order to Show Cause, it set this matter for hearing on May 18, 2016. Upon the Court's review of the Debtors' Response, it does not appear that there are any disputed facts to be heard by the Court. Therefore, the scheduled hearing in this matter will be vacated.

## I.  FACTS

1.   Debtors filed this case on September 17, 2010.

2.   The Debtors listed the value of their principal residence on their Schedule A as $244,000.00 and they scheduled two mortgage debts encumbering that property.

3.   Both mortgage creditors filed proofs of claim:
     a.   One Bank West, FSB, servicing agent for the first mortgage holder, Deutsche Bank National Trust Company, as trustee, filed a proof of claim in the principal amount of $245,525.02. That proof of claim showed a pre-petition payment arrearage of $14,823.62. Servicing of this loan was subsequently assigned to Ocwen Loan Servicing, LLC ("Ocwen").
     b.   Wells Fargo Bank, N.A., holder of the second priority mortgage, filed a proof of claim in the amount of $77,279.78.

4.   On February 25, 2011, the Court confirmed the Debtor's chapter 13 plan (the "Plan"). The Plan provided:
     a.   Debtors would make payments to the Chapter 13 Trustee in the total amount of $33,860.00 over the term of their 5 year Plan.
     b.   Debtors would cure the pre-petition payment arrearage on the first mortgage.

ORDER ON DEBTOR'S RESPONSE
TO MOTION TO SHOW CAUSE
Case No. 10-33656 HRT

    c.      Debtors would maintain regular post-petition monthly payments on their first mortgage loan with payments being made directly to the creditor.

5.      On February 25, 2011, the Court entered its *Order Granting Motion for Valuation of Collateral and Determination of Secured Status* (docket #34) (the "§ 506 Order"), which granted the Debtors' *Motion to Determine Secured Status Pursuant to 11 U.S.C. Section 506* (docket #22) (the "§ 506 Motion"). The Court's § 506 Order provides that

    a.      The second lien held by Wells Fargo Bank, N.A., on 6849 E. 131st Way, Thornton, CO 80602 is valued at zero ($0) and is entirely unsecured for purposes of the debtor's plan.

    b.      The creditor will have an unsecured claim in either the amount of the debt as listed in the debtor's schedules or on any allowed proof of claim filed by the creditor (whichever is greater).

    c.      Upon successful completion of the debtor's plan, the debtor may request an order that the lien is extinguished.

    d.      If the bankruptcy case is dismissed or converted to a Chapter 7, this Order shall be deemed vacated and the lien shall be reinstated and shall continue in full force and effect as specifically provided by 11 U.S.C. §§ 348(f)(1)(C) and 349(b)(1)(C).

6.      After the Debtors completed making plan payments to the Chapter 13 Trustee, the Trustee served her *Notice of Final Cure Payment* (docket #69) under FED. R. BANKR. P. 3002.1(f) (the "Rule 3002.1 Notice") on Ocwen, as agent for the first mortgage holder. In its response to the Rule 3002.1 Notice, Ocwen reported that

    a.      it agreed that the pre-petition arrearage had been fully cured, but

    b.      the Debtors were eight payments in arrears on post-petition monthly payments of $1,369.78 for a total post-petition arrearage amount of $10,949.60.

7.      On March 23, 2016, Trustee filed *Trustee's Statement Regarding Debtors' Eligibility for Discharge* (docket #70) (the "Statement") and *Chapter 13 Standing Trustee's Final Report and Account* (docket #71) (the "Final Report"). Trustee's Statement seeks no relief; it simply informs the Court that the Debtors have not filed proof of their completion of a financial management course; have not filed Local Bankruptcy Form 3015-1.11 requesting entry of a discharge; and that there exists an unresolved dispute concerning a mortgage deficiency. But, at the same time, Trustee's Final Report states that the case has been fully administered and seeks entry of a final decree.

ORDER ON DEBTOR'S RESPONSE
TO MOTION TO SHOW CAUSE
Case No. 10-33656 HRT

8.      In the Debtors' Response, they acknowledge that Ocwen's report of their post-
        petition mortgage arrearage is correct.

9.      Debtors' Response reports that they have received conditional approval for a
        mortgage loan modification and that the first of three trial payments under the
        proposed modification is due on June 1, 2016.  If the Debtors successfully
        complete the trial period, they expect final approval to be forthcoming in mid-
        August of 2016.  If they are ultimately successful in receiving a modification of
        their first mortgage loan, they will be current on their first mortgage obligation
        and there will no longer be a payment arrearage on that account.

## II.  DISCUSSION

Debtors ask the Court not to dismiss their case at this time but to hold the matter in
abeyance until after a final determination is made with respect to their application for a loan
modification.

In relevant part, 11 U.S.C. § 1328(a) provides that

as soon as practicable *after completion by the debtor of all payments under the
plan* . . . the court shall grant the debtor a discharge of all debts provided for by
the plan or disallowed under section 502 of this title [with certain enumerated
exceptions].

11 U.S.C. § 1328(a) (emphasis added).

As the term is used in § 1328, "payments under the plan" includes payments made
directly to a mortgage holder when provision for that direct payment is a term of a debtor's
confirmed plan.  *See, e.g., In re Gonzales*, 532 B.R. 828 (Bankr. D. Colo. 2015).  Debtors
acknowledge that they did not make all of those payments during the term of their Plan.

The Court finds that the Debtors are in material default under the terms of their
confirmed Plan.  Eight payments out of the 60 month term of the Debtors' Plan is not de
minimis.  It is well over 10% of all post-petition payments falling due during the plan term.  Nor
does the default merely create an issue with respect to the Debtors' mortgage between them and
a creditor who holds a long term debt that is not even discharged in a chapter 13 case.  11 U.S.C.
§§ 1322(b)(5) & 1328(a)(1).

First of all, it leaves over $10,000.00 that the Debtors had committed to use for making
ongoing mortgage payments under their confirmed Plan unaccounted for.  More importantly, a
discharge in this case would allow the Debtors to extinguish the lien of Wells Fargo, the holder

ORDER ON DEBTOR'S RESPONSE
TO MOTION TO SHOW CAUSE
Case No. 10-33656 HRT

of the second mortgage on the Debtors' residence.  Under the Court's § 506 Order, the Wells Fargo claim was to be paid as an unsecured claim along with the other Class Four unsecured creditors.  On account of its $77,279.78 secured debt, it received payment of $1,507.62.  The Court's § 506 Order also provides that "[u]pon successful completion of the debtor's plan, the debtor may request an order that the lien is extinguished."

The ability to avoid a valid lien interest under 11 U.S.C. § 506 is a remarkably powerful tool granted to debtors under the Bankruptcy Code and case law interpreting the relevant Code sections.  *See* 11 U.S.C. § 506(a) (1) (bifurcation of claims secured by collateral into secured and unsecured portions depending on the value of the collateral); 11 U.S.C. § 1322(b)(2) (permits the modification of secured claims that are not secured only by an interest in the debtor's principal residence).  *See also In re Schmidt*, 765 F.3d 877, 880 (8th Cir. 2014) (permits debtor to strip off lien against residence when lien is without value); *In re Davis*, 716 F.3d 331, 334–39 (4th Cir. 2013) (approved stripping of valueless junior lien from residence in chapter 20 case where the debtors are ineligible for discharge); *In re Zimmer*, 313 F.3d 1220, 1222–27 (9th Cir. 2002) (permits strip off of valueless junior lien); *In re Lane*, 280 F.3d 663, 665–69 (6th Cir. 2002) (same); *In re Pond*, 252 F.3d 122, 124–27 (2d Cir. 2001) (same); *In re Tanner*, 217 F.3d 1357, 1358–60 (11th Cir. 2000) (same); *In re Bartee*, 212 F.3d 277, 284–95 (5th Cir. 2000) (same); *In re McDonald*, 205 F.3d 606, 609–15 (3d Cir. 2000) (same).

Creditors routinely lose the ability to collect contractual debts as a result of the bankruptcy process.  A lien interest is far more than a contractual debt; it is an interest in property.  The power to extinguish a valid property interest is extraordinary and, in the Court's view, requires strict compliance with the conditions that the Bankruptcy Code and the Debtors' confirmed Plan set upon exercise of that power.  In connection with another Code section that allows a secured creditor's lien to be avoided, the Ninth Circuit's Bankruptcy Appellate panel has said:

> Section 522(f) is a powerful right available to a debtor.  It allows a debtor to avoid a creditor's judgment lien on his or her real property if the debtor's interest in that property would be exempt but for the existence of the creditor's lien.  Because a debtor may avoid the judicial lien creditor's interest in the property without its consent, strict compliance with procedural matters when presenting a motion to avoid the creditor's lien is required.

*In re Frates*, 507 B.R. 298, 302 (B.A.P. 9th Cir. 2014).

In section IV.C.1. of the Debtors' Plan, they provide that Wells Fargo shall retain its lien "*until discharge under 11 U.S.C. § 1328 or payment in full*" (emphasis in original).  In addition, the Court's § 506 Order provides that the Debtors may request an order extinguishing the Wells Fargo lien only upon "successful completion of the debtor's plan."  Wells Fargo, or any other

ORDER ON DEBTOR'S RESPONSE
TO MOTION TO SHOW CAUSE
Case No. 10-33656 HRT

creditor whose property interest is extinguished through operation of a debtor's reorganization is
entitled to rely on strict compliance with such plan and associated court orders.  The Debtors
have not complied with their commitment to maintain post-petition ongoing mortgage payments
under the terms of their confirmed Plan.

Here, the Debtors made their final payment to the Chapter 13 Trustee sometime prior to
November 10, 2015, when the Trustee sent out her Rule 3002.1 Notice.  At best, it will be
August, 2016, before the Debtors may get final approval on a first mortgage loan modification.
Even then, they will be current on their first mortgage not because they have actually made the
missed payments but because the loan has been re-amortized, allowing the Debtors to start over.
Under the circumstances, the Court cannot find that the Debtors have complied with the
requirements of their confirmed Plan, the Court's § 506 Order or 11 U.S.C. § 1328(a) to a degree
that justifies granting a discharge under § 1328(a), which, in addition to discharging the Debtors'
dischargeable debts, would have the effect of extinguishing Wells Fargo's lien interest in the
Debtors' residence.

The result reached by the Court in this case does not mean that a debtor has no ability,
following the end of the plan, to make up missed mortgage payments or to pay post-petition fees.
Rule 3002.1(h) sets up a process by which a bankruptcy court, after the debtor has completed all
payments to the chapter 13 trustee,  may determine the amount necessary to cure the mortgage
debt.  The very fact that, upon a timely Rule 3002.1(h) motion, the court must make that
determination strongly suggests that the court must also permit a reasonable time period to effect
that judicially determined cure.  Any other interpretation would relegate a court's determination
under Rule 3002.1(h) to a determination of whether or not the mortgage debt was cured during
the plan term.

Here, in excess of $10,000.00 that should have been spent to keep the monthly post-
petition mortgage obligations current is unaccounted for.  Debtors' Response indicates that they
believed they were current on post-petition mortgage payments.  But that is a claim that inspires
some skepticism given the magnitude of the default and the fact that the Creditor's payment
accounting shows no regular payments tendered by the Debtors after a payment received by the
Creditor on July 21, 2015.[1]  The Debtors did not act to address the problem until after the end of
their plan term and it will be approximately nine months after the end of the Debtors' plan term
before the Debtors will know if their modification is approved.  Under these circumstances, the
Court cannot find that the Debtors have made all the required payments under their confirmed
Plan and have complied with the terms of their Plan.

_____

[1] The payment history does show a credit of $159.71 on October 7, 2015.  It is not clear
whether this was a payment made by the Debtors or, more likely, application of funds held in
suspense.

ORDER ON DEBTOR'S RESPONSE
TO MOTION TO SHOW CAUSE
Case No. 10-33656 HRT

Finally, the Court is loathe to reach this result through the process of an order to show cause. However, upon the Court's review of the Trustee's Statement and the Trustee's Final Report, the Court found that no interested party had sought dispositive relief from the Court to bring final resolution to administration of this chapter 13 case. Consequently, the Court resorted to its Order to Show Cause to resolve the issues related to the Debtors' compliance with the terms of their confirmed Plan and their eligibility for discharge. The Court's Order to Show Cause invited all parties-in-interest – the Debtors, the lenders, and the Chapter 13 Trustee – to respond but only the Debtors have chosen to do so. Therefore, the Court does not have the benefit of a motion from an interested party nor has it been able to benefit from the views of other interested parties.

### III. CONCLUSION

Because the Debtors are in material default under the terms of their Plan, cause exists to either dismiss the Debtors' case or convert it to a case under chapter 7. 11 U.S.C. § 1307(c)(6). The Debtors may, prior to May 20, 2016, elect to convert this case to a case under chapter 7 and, in the absence of such election, on May 23, 2016, this case shall be dismissed. Therefore, it is

**ORDERED** that the hearing in this matter, scheduled for Wednesday, May 18, 2016, is hereby VACATED. It is further

**ORDERED** that the Debtors may elect to convert this case to a case under chapter 7 by filing a notice of conversion under 11 U.S.C. § 1307(a) on or before **May 20, 2016**. It is further

**ORDERED** that, in the absence of a notice to convert filed by the Debtors on or before May 20, 2016, on **May 23, 2016**, this case shall be DISMISSED.

Dated this ____5th____ day of May, 2016.

                                        **BY THE COURT:**

                                        Howard R. Tallman, Judge
                                        United States Bankruptcy Court